Good morning. Good morning, and may it please the Court, Casey Raymond for Petitioners. And I'd like to reserve three minutes for rebuttal. All right, you may proceed. The FMCSA comes before this Court claiming that it is safe enough for a bus driver to drive a busload of people for 10 hours without taking a break, and that California's century-old mid-shift break requirements are preempted, even though there is no comparable federal requirement for these bus drivers to have mid-shift breaks. The Court should reject the FMCSA's argument and grant the petition for review, because the FMCSA lacked the lawful authority to preempt California's mid-shift breaks as to bus drivers, and because they acted in an arbitrary and capricious way. I want to start with a quick note about the Teamsters' decision on truck drivers. Because you distinguished Teamsters by arguing that FMCSA has not imposed any mid-shift break rules for bus drivers as opposed to for the truck drivers. But the federal HOS regulations do regulate off-duty periods for bus drivers, right? The federal regulations regulate off-duty periods for the end of the day and the end of the week. So why isn't that close enough, like horseshoes and hand grenades? Yes, Your Honor, because the requirement for the same area should be narrowly read. And we know this from a couple of sources. And I want to focus today in particular on a May 1984 legislative report that is cited by respondents no less than six times and cited by both the FMCSA in its truck driver preemption decision and in its bus driver preemption decision. And that report gives a very illuminating example about the size of the areas we're comparing. So in the report, they give the example that there's a federal regulation requiring somebody to be at least 21 years old to drive a CMV. A state, on the other hand, has three different regulations. It has one regulation that you have to be 18 years old to drive a CMV during the day, another that you have to be 25 years old to drive a CMV at night, and a third that you have to be 65 years old at all to be able to drive a CMV. And what this report tells us is that the 18-year-old state law is less strict than the federal requirement, and so it would be preempted. The 25-year-old is stricter than the federal requirement, so you'd go through an analysis similar to 31141C4 here. But the 65-year-old maximum age, that report says, actually cannot be preempted at all because it's in a different area. So what does that tell us? Your Honor, to your question, it tells us that the area is read narrowly. It's not good enough to be horseshoes and hand grenades, as you put it. In the report, the broad area was what age can be used as a proxy for somebody to be responsibly driving a CMV. Here, the broad area the FMCSA wants you to do is off-duty periods or fatigue. But in that report, it was different areas for maximum age and minimum age, even though they seemed to be dealing with the same type of issue. Here, it is different areas for mid-shift breaks versus end-of-day breaks or end-of-week breaks. But so didn't the FMCSA specifically decline to impose a meal break requirement for bus drivers, even though it decided to impose one for truck drivers? So how do you reconcile that fact? Doesn't that indicate that all of these break-related regulations are in the very same regulatory areas? So why should California be able to impose the precise regulation that the FMCSA specifically did not want to regulate? Well, first of all, Your Honor, I think under the preemption guidelines, under 31141C1, the agency must regulate the area in order to be able to preempt. And in 2011, the agency did regulate mid-shift breaks for truck drivers. But just the fact that they didn't decide to impose it for bus drivers doesn't mean they were putting out a regulation that was saying, Thou shalt not impose mid-shift breaks. What that does is in the scheme of the Motor Carrier Safety Act of 1984, if the federal government decides not to regulate for whatever reason, maybe they don't think they have enough data at the time or for another reason, that leaves it to the states to regulate. And what we can see through that 1984 example, that legislative report, is that even when the federal government decides not to regulate light on maximum age, that actually the federal government and the Motor Carrier Safety Act of 1984 is okay with a level of disuniformity. Just imagine that you're a 66-year-old CMV driver in Alabama and there's no state requirement, and you drive west into Mississippi and they have a 65-year-old age limit. What that legislative report is telling us, again, that's relied on by respondents no less than six times, is that there is a level of disuniformity when there is no federal regulation in the very same area. Here I'm struggling to understand why the timing of the break matters, because both the state's regulation and the federal regulation, they both are dictating how long a driver can be on duty before there's a mandatory off-duty period. So to me, they seem like the same area. I mean, what's the significance of whether the break's in the middle of the shift or the end of the shift or for purposes of determining whether it's preempted? Yes, Your Honor. So the California Manufacturers Association case that we cite talks about consumption and elimination being essential for humankind when it's talking about California's meal and rest breaks. But put it more colloquially, imagine you're on a long road trip and you're driving many hours. We all know that it's different when you are actually able to eat or rest during the middle of the day versus when you decide to stop during the night or if you're on a really long road trip when you're stopping overall. So they're covering different purposes. Again, if you don't – the other way I like to think of it is if I were a passenger in a bus or I were driving next to that bus. And then the bus driver gets up and says, I have to take my California meal break. You all stay on the bus. I'll be back when that's over. That would work really well, wouldn't it? Well, Your Honor, I think a couple of points to that because I think that is an argument about flexibility and scheduling. First, we know from the FMCSA itself that there are generally places where they're able to stop. If you look at ER-7, that's one of their arguments to say, don't worry, this bus driver will not actually be driving 10 hours without a break, which I think would scare most people driving next to the bus driver or passengers on it. And again, that's what they're asking you to believe. So they say, don't worry, they can actually find – they have regular places where they stop. And so it's not that the bus driver is going to pull over to the side of the road. As the FMCSA tells us at ER-7, there are places they can stop. But what they don't tell you is, under their own preemption decision at ER-10 and 11, that even when the buses stop, those bus drivers are expected to keep working under the FMCSA's scheme. They, in fact, say that it's essential that they keep working for passenger needs or that they're able to leave in order to make these strict deadlines. Mr. Raymond, I'm trying to figure out where we are in the statute in terms of this analysis. So I take it from your briefs. There's a footnote in your supplemental brief that the question of whether this is a regulation on commercial motor vehicle safety was settled by Teamsters. You preserved that for further proceedings. But that's not the question that you're asking us to decide now. That's been decided by Teamsters. And so then your arguments seem to sound either under C1C, is this additional or more stringent to such regulation, which is kind of the statutory argument. But some of it also seems to be then your kind of administrative argument about the agency's decision to decide whether it's an unreasonable burden in terms of uniformity and things. If we're looking at it, and that's a tougher row for you to hoe, with respect to the first one, whether it's more stringent, which is where you started, I mean, this is just additional to such regulation. And whether, as we recognized in Teamsters, we accepted that it was as applied. I know you point to the one line there that there was already a regulation on it, but this is additional to that regulation, California's laws. Well, Your Honor, I guess to answer your question about where we are in the statute, and then your answer to the question about additional, I am looking at 31141C1, which does talk about making sure that the FMCSA has promulgated in the same area. They require a comparison to something they promulgated under 31136. And I think from that 1984 report and the FMCSA's own decision, it does have to be something in the same area. What words are doing that work in the statute? Well, when you look at 31141C1, big A, B, and C, if you look at A, it says that it is less stringent than something promulgated by the FMCSA under 31136, and then it uses the phrase such regulation and big B and big C. So that's doing the work, and we know from the 1984 report. But or is additional to such regulation. Your Honor, I think the additional to, let me give, I don't think it's doing the work that Your Honor is positing here. I think an additional to in the Teamsters case, for example, was that you had California's breaks, which the Teamsters court found were more stringent because they required it to be taken at specific times, and they were in addition to that they had to take it at, you know, they had to take more breaks. I don't think addition to, however, bears the weight that if the FMCSA has promulgated anything under 31136 on any safety topic, that means that it's in addition to. So I think trying to read in addition to to not be tethered to something in the same area is not what was intended here. And you can actually look at it. And it's not the same area to talk about whether or not people have to break during a shift of transporting passengers? No, Your Honor. I think when you get off for the day or you get off for the week, it's fundamentally different than whether you can rest your body and eat a meal. Just imagine on a 10-hour road trip, is it really the same when you stop for the day versus being able to stop in the middle and eat something so that you have focus? Again, as the FMCSA talks about itself in its 2011 rulemaking when it granted truck drivers mid-shift breaks at ER 49, people often don't know their own level of fatigue when they're driving. And what these mid-shift breaks do that the end-of-the-day breaks and end-of-the-week breaks don't do is they actually provide you that ability to take a break. I do want to talk about, for a second, Your Honors, the factors in 31141C4 regarding the unreasonable burden because I think there's a marked difference here, again, from Teamsters. In Teamsters, there was the question about whether the marginal benefit of California's mid-shift breaks was worth the burden that those breaks imposed. Here it's a fundamentally different question, and that is, again, whether truck drivers can get a break at all. And I want to look at both the benefits and the costs. So the benefits at ER 49, the FMCSA told us in their truck driver decision, or in their 2011 regulations, that mid-shift breaks do solve a problem of fatigue driving. They say that at ER 49. But they try to tell you here, don't worry. They don't actually need a break, but they're going to get it anyways. And they do this in a couple of ways. One, that they repeatedly state, is that under 49 CFR 392.3, there's a regulation that if a driver is so fatigued or so ill that they're able to take a break. So don't worry. They're going to get the break. But that actually doesn't add up. As I mentioned earlier in that same 2011 rulemaking, they stated at 76 FR 81134, that drivers don't know their own level of fatigue, so we can't rely on them to know when they need to take a break. Second, at ER. Well, but, okay, that's why there can be regulation. But you want to regulate differently than you think that the Federal Motor Carrier Safety Administration doesn't know as well as you do what truck drivers or what bus drivers need. I believe that the FMCSA was arbitrary and capricious in their analysis. Your Honor, I've seen it. Would you like to save your rebuttal time? Your Honor, would you like me to finish answering the question? Well, you can come back on that. That I'm just saying California knows better than the Feds. That's the theme here, right? Well, Your Honor, we believe the Feds didn't have the authority and acted in an arbitrary and capricious way. Not that we know better. Thank you, Your Honor. Good morning, Your Honors. Jennifer Utrecht on behalf of the Federal Motor Carrier Safety Administration. Good morning. If you can keep your voice up, that would be great. I will try.  Or maybe move the mic a little bit. You're a little shorter. Is that better? Yes, that is better. Thank you. Your Honor, in Teamsters, this court held that the agency had appropriately determined that California's meal and rest break laws were preemptive with respect to interstate truck drivers. The question here is whether the agency similarly was reasonable when it made that same preemption determination with respect to bus drivers engaged in interstate commerce. Petitioners have argued here that Teamsters is distinct because they say the federal regulations do not require mid-shift breaks and therefore the California laws are not actually additional to or more stringent than the federal regulations. That's wrong for a couple of reasons. First, Teamsters held, just to clarify, Teamsters held that a state law that governs more broadly… It's pre-Loper-Bright, right? It is pre-Loper-Bright, Your Honor, but it is, of course, still subject to stare decisis. Loper-Bright recognizes statutory interpretations that predate Loper-Bright decision still remain, the statutory holdings still remain the law of this court. I'd also note that the majority of the analysis in Teamsters, although framed in the Chevron language, discusses the text and the purposes and the structure of the act in the same way this court would now if it were engaged in statutory interpretation under the post-Loper-Bright scheme. But what we know is that Section 31141 allows FMCSA to review state laws on commercial motor vehicle safety. We know that Teamsters held that a state law doesn't have to be directed to commercial motor vehicle safety. It can govern more broadly and nevertheless as applied to an area where it's within FMCSA's regulatory authority and FMCSA has enacted regulations nevertheless be on commercial motor vehicle safety. And here we have federal regulations that govern how long someone can remain on duty and driving before they have to take a mandatory off-duty period. Now when Teamsters discussed repeatedly that the FMCSA revised its regulations to add a 30-minute mini-break period for truck drivers, that was undoubtedly an important fact to the Teamsters panel. How can we be sure that Teamsters would have come out the same way if it hadn't been for that fact? So I think the answer to that question, Your Honor, is that we know from the statute that FMCSA can only review state laws for preemption if they are additional to or more stringent than federal regulations, which means we're always going to be presented with a situation where the state law does something that the federal regulation does not. And if you read that portion of Teamsters as narrowly as the petitioners urge you to, to say that, oh, well, we impose a mid-shift break requirement and the federal government doesn't, well, that's an additional requirement. It's an additional off-duty period the federal regulations don't require. If you read it so narrowly as to say, well, that's completely out, then you're essentially reading the additional to portion out of the statute. The second reason I would say for why petitioners are really reading what it means to be in the same area far too narrowly is that this isn't a situation in which there's an entire gap in federal regulation. There are comprehensive fatigue management regulations that the federal government has enacted that govern how long bus drivers can drive. And this wasn't an oversight. This isn't a situation where the federal government just has not looked into this problem or just hasn't gotten around to regulating. Since 2011, when the 30-minute mid-shift break requirement was imposed for truck drivers, the federal break requirements and the hours of service regulations have been amended several times across several different administrations, and there has never been the same requirement imposed for bus drivers. And the reason for that, as explained by the FMCSA here and in response to comments in past rulemakings, is because the nature of bus operations is different than truck operations. With respect to long-haul truck drivers who are on the highway for long stretches of time, they often don't take breaks by the nature of their operation, whereas bus drivers, of course, their passengers have transfers to different motor carriers. Their passengers also have rest break needs. And so the economic reality is that these bus drivers are taking time off consistent with passenger needs. They're taking breaks with that. And FMCSA has determined that maintaining those flexibilities for bus drivers to be able to take those breaks with passenger needs is important and that there is no clear evidence that requiring mid-shift breaks at specific intervals, like California's laws require, actually advance the safety purposes. Well, California's wage and hour regulations are not focused on public safety. Teamsters, of course, indicates that the purpose of the state's regulation is not dispositive. But do we take that into consideration at all? So I think it – two points, Your Honor. First, I hear your friend on the other side basically talking about people when they're hangry, that they don't realize how that influences safety, perhaps. So two responses, Your Honor. First, I mean, Teamsters does state the purposes that a law doesn't have to be specifically directed at safety in order to be a law on commercial motor vehicle safety. But it also says, which is that these same California meal and rest break laws California has recognized are at least in part designed for safety. And Teamsters identified that as one of the bases for its statutory holding that California's laws were on commercial motor vehicle safety. So when this Court is conducting the analysis, I mean, I think that aspect of Teamsters applies equally here. We have the same California meal and rest break rules, of course, at least part of the reason why these were enacted was safety. The fact that there are other broader goals behind the California laws does not change the fact that when we are looking at the overall scheme as Teamsters directs, the key question is, is California regulating in an area where the FMCSA has safety regulatory authority and, in fact, has enacted regulations in this area? The state law here, at least under which the orders were issued, pertains only to transportation as well. This isn't meal and rest break for desk jobs. That's correct, Your Honor. So I guess I'm trying to figure out your broader reading of Teamsters, just how much work that key passage that Judge Callahan had noted that there was already a regulation in that area. It struck me as somewhat important to us. This is an extraordinary statutory scheme that involves not just preemption and not just delegation, but delegated preemption. So it's kind of doubly we've been told to view those quite narrowly. And why isn't that the crucial limiting principle we said it is? That passage occurs where we said the concern is it would allow the agency's reading of ON to preempt, not via Congress but through delegated authority, to preempt all sorts of state regulations in the absence of a kind of conflicting or similar regulation at the same time. So, I mean, is that really just dicta or is that really doing the kind of the key work that would limit the agency to doing more delegated preemption than Congress even has allowed it? So two responses, Your Honor. I think it's important to understand that Teamsters came before this court in part focused on the specific break requirement in that case was because the agency had identified that as one of the reasons why it had changed its position from 2008. And, of course, this court had to look at the reasons the agency gave for why it was changing position to determine whether that was a reasonable thing. And so I think that's part of why that discussion exists in Teamsters. I don't think that this court should read that discussion to hold that there always has to be a mid-shift break requirement in order to find that a state law is on commercial motor vehicle safety. And I do agree, Your Honor. I believe you cited the portion of Teamsters that talks about how there should be some limiting principle. But I read Teamsters, and this is I think on page 852, as saying that the agency's interpretation is actually pretty circumscribed. It has to be within FMCSA's specific regulatory domain, meaning that the FMCSA couldn't, for example, preempt state laws that are laws that govern conduct FMCSA itself could not actually govern. Well, but this is, I mean, I think because we also recognize there that the agency can engage in as applied preemption of generally applicable state laws. I mean, so in other words, the preemption that it must be doing is within the agency's transportation safety concern for federal motor carriers, but it's as applied. So why can't it just get into any generally applicable state law by its say-so that, well, this affects the uniformity of this is an unusual burden on interstate commerce? I mean, that's not a limiting principle if it's as applied. So I think if this court were presented with a situation, which I don't think is presented here, where there was truly a gap in the federal regulatory scheme, there was, you know, there would be questions about whether this was either truly on commercial motor vehicle safety or was truly additional to or more stringent than federal regulations. But we don't have that kind of gap here. And the reason for that is because, as I mentioned, there is a comprehensive scheme that governs when drivers can be on duty and when they can't be. But that goes to, as I understand it, just to hear you frame this as fatigue-related concerns. I take the state's view that meal and rest breaks. The rest in there doesn't refer so much to fatigue as to other bodily functions. And so are those really the same area? So I think the same area is what conduct is actually being required by the federal regulations and the California law. Are they prescribing the same or preventing or requiring the same sorts of things to happen? So the federal regulations state when you have to stop driving and be relieved of duty. And the same thing is true for California's laws. They require that to happen more frequently and at more frequent intervals, which is exactly the same as in Teamsters. In fact, you know, to move beyond the do we have authority to look at this at all into the specific preemption criteria that Congress set forth that are reviewed by this court under the arbitrary and capricious standard. The fact that FMCSA has concluded that requiring mid-shift breaks happen at a specific time rather than allowing drivers to attend to those needs when they are fatigued or when their passengers require those breaks, that is a flexibility that FMCSA has determined is important to bake into the federal scheme and appropriately balances the safety benefits of any required break against those flexibilities. And so in many respects, the fact that FMCSA has made that determination and California's laws abrogate that flexibility that FMCSA has intentionally baked into the federal scheme shows that this is an unreasonable burden, perhaps even more so than it was in Teamsters because your requiring breaks that FMCSA has determined should happen with respect to passenger schedules and the driver's own fatigue needs rather than a specific break happening at a specific period of time. If there are no further questions, we would ask that you affirm the agency's decision. Thank you. We don't appear to have any additional questions. Thank you for your argument. Thank you, Your Honors. I want to address two points that my colleague brought up. First, I want to emphasize that what the FMCSA is asking you to do is to really broaden the Teamsters decision. As Your Honors pointed out, in Teamsters there was a reliance time and again that there were federal mid-shift break requirements applied by the FMCSA to truck drivers. As the Court said in Teamsters, that was the basis for the FMCSA's preemption decision. So the abstraction to this idea that it's fatigue management and that all you need is that the federal government has done absolutely no federal regulation at all is not enough to get there. And I think the Teamsters Court was clear on that. And, Your Honor, I think you pointed to the fact that this is a very narrow preemption authority through multiple layers of delegation. And we see, even soon after the passage of the Motor Carrier Safety Act of 1984, both the Fourth Circuit and specialized carriers and the Sixth Circuit interstate towing talking about how narrowly we need to read preemption under the Motor Carrier Safety Act. I think the Sixth Circuit said the goal of federal regulation is to supplant, or to supplement, not supplant. I also want to stress, Your Honors, that the structure of 31141C and the committee report, the 1984 committee report, makes clear that to the degree the FMCSA would actually have the power to try and clear the field of all mid-shift breaks, they would also have to do that through an actual regulation, not just through a post hoc preemption decision. So the FMCSA is saying, well, we potentially considered this in 2011. We decided not to do it, so we can wipe all mid-shift breaks off the tables, including California. If they really wanted to do that, Your Honor, which we don't think they have the authority to do, but at the very least they would have to issue a regulation saying that states shall not enact mid-shift break requirements because they're a danger to safety. And that's the argument they're making. Now, it's a counterintuitive one. I don't think many of us would believe that, but that's what they would have to do. Here, they're trying to stretch their authority even more. They haven't issued that kind of regulation. They had a couple offhand comments before the actual preemption decision, and they're trying to say post hoc, well, we did a deep consideration of this issue for bus drivers and found it unsafe. For my last little bit, I do want to touch about on the flexibility that opposing counsel spoke to. Just to be clear, there's no flexibility for drivers here. Their employer can force them to drive 10 hours without a break. And they posit that, don't worry, these bus drivers are getting breaks, but we actually see at ER 154 and the curbside and motor coach carrier safety study that the federal investigators in that segment found that they were not, in fact, getting any breaks. So in conclusion, Your Honors, I think there is no flexibility here. The FMCSA asks that drivers do not get break over 10 hours, and I think that is both unlawful and not reason. Thank you, Your Honors, for your time. Thank you. This matter will stand submitted.
judges: CALLAHAN, THOMAS, JOHNSTONE